DECISION
{¶ 1} Relator, Interstate Brands Corporation, has filed an original action in mandamus requesting this court to issue a writ of mandamus to order respondent, Industrial Commission of Ohio, to vacate its order that awarded permanent partial disability compensation, pursuant to R.C. 4123.57(B), for scheduled loss benefits in connection with injuries to claimant's, Amador Limon's, hand, and to issue an order denying such compensation.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Section (M), Loc.R. 12 of the Tenth District Court of Appeals, who rendered a decision including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate decided that a writ of mandamus should be denied. Relator has filed objections to the magistrate's decision.
 {¶ 3} As a result of a work-related injury, claimant's left index and left middle fingers were amputated. Claimant was paid permanent partial disability compensation for loss of these fingers. Claimant filed a claim for an additional permanent partial disability award based on the loss of function of the ring and little finger on his left hand. Claimant was examined on behalf of the employer by Dr. Frank C. Hui, who stated:
 {¶ 4} "2) Mr. Limon definitely has significant limitation of function, such as grasping and dexterity. The main reason is due to the loss of motion of the ring and little fingers and the numbness at the tip of these two digits. * * *
 {¶ 5} "* * *
 {¶ 6} "As you can see, in addition to amputation of the index and middle fingers, I feel that Mr. Limon also has substantial loss of function of the ring and little fingers which has caused him to have loss of grip and dexterity. In my opinion, I feel Mr. Limon is entitled to additional discretionary loss of use of the left hand."
 {¶ 7} Both the district hearing officer and the staff hearing officer concluded that claimant had suffered a greater disability than normal, and found he was entitled to an additional award. In its objections, relator argues that claimant did not sustain a greater than normal loss because, as a supervisor, he was not required to use tools and he was able to return to the job he held prior to his injury. In essence, relator is arguing the weight of the evidence does not support the award.
 {¶ 8} R.C. 4123.57(B) provides:
 {¶ 9} "If the claimant has suffered the loss of two or more fingers by amputation * * * and the nature of the claimant's employment in the course of which the claimant was working at the time of the injury * * * is such that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds the normal handicap or disability resulting from the loss of fingers, or loss of use of fingers, the administrator may take that fact into consideration and increase the award of compensation accordingly, but the award made shall not exceed the amount of compensation for loss of a hand."
 {¶ 10} Here, there is no argument that claimant lost two fingers by amputation and there is some evidence that claimant suffered a greater than normal disability. Despite the testimony of relator's employees that claimant has returned to the same position of employment he held before the injury and that the injury did not prevent his return to work, there is some evidence to support the commission's order.
 {¶ 11} Claimant is a supervisor of mechanics and the commission found he was required to use his fingers to manipulate and use tools. Claimant testified that it is sometimes quicker for him to make repairs to avoid down time on the production line, than to show employees how to do a repair. In fact, claimant was working as a supervisor using tools to repair a machine when the injury occurred. Thus, the commission properly considered all of the circumstances of claimant's employment, not just his job title, and there is evidence to support its decision.
 {¶ 12} Upon a review of the magistrate's decision and an independent review of the record, this court adopts the magistrate's decision as its own. Relator's objections to the magistrate's decision are overruled and the requested writ of mandamus is denied.
Objections overruled,
writ of mandamus denied.
TYACK, P.J., and KLATT, J., concur.
 APPENDIX IN MANDAMUS {¶ 13} Relator, Interstate Brands Corporation, filed this original action in mandamus asking the court to issue a writ compelling respondent Industrial Commission of Ohio to vacate its order awarding permanent partial disability ("PPD") compensation under R.C. 4123.57(B) for scheduled-loss benefits in connection with hand injuries and to issue an order denying the requested compensation.
Findings of Fact:
 {¶ 14} On September 14, 2000, Amador Limon ("claimant") was working as a maintenance employee. At the time he was injured, claimant was working on the gears of a bread-sheeting machine.
 {¶ 15} His workers' compensation claim was allowed for a crush injury to the left hand resulting in the amputation of the left index finger and the left middle finger. Claimant underwent numerous surgeries on the hand, including repairs of the ring and little fingers.
 {¶ 16} The self-insured employer paid PPD compensation for the loss of the index finger (35 weeks of compensation) and the middle finger (30 weeks).
 {¶ 17} In December 2000, claimant filed a request for additional PPD compensation under the provision in R.C. 4123.57 permitting an increased award for loss of fingers in certain circumstances. Claimant filed medical evidence in support.
 {¶ 18} In August 2001, claimant was examined on behalf of the employer by Frank Hui, M.D., a hand surgeon. Dr. Hui noted the amputation of the index and middle fingers, and he also found "substantial" loss of function of the ring finger and little finger. Dr. Hui concluded that, based on the extent of impairment to the hand, claimant "is entitled to additional discretionary loss of use of the left hand."
 {¶ 19} In August 2001, the matter was heard by a district hearing officer, who found that claimant had satisfied the requirements for an increased award:
 Claimant has already received the total loss award of 35 weeks for the left index finger and 30 weeks for the left middle finger.
 Claimant is a machine repairman/supervisor that is permanently unable to perform the tool manipulation required of the former position of employment. The disability is found greater than employe[e]s in general as required by O.R.C. 4123.57(B).
 Claimant is awarded the remaining 110 weeks of "discretionary" scheduled loss.
 The discretionary award is demonstrated on a medical basis by the 8/6/2001 report of Doctor Hui.
 The District Hearing Officer is also not particularly persuaded by the effort of employer's counsel at hearing to discredit the opinion of their own examining physician.
 {¶ 20} In November 2001, the administrative appeal was heard by a staff hearing officer, who affirmed as follows:
 The claimant sustained a severe crushing injury to the left hand, resulting in amputation of 2 fingers. ***
 Claimant requests a discretionary loss of use award for the entire left hand.
 An independent medical evaluation was performed by Doctor Hui, orthopedic surgeon and recognized hand specialist, and a report dated 8/6/2001 was submitted to the file. Doctor Hui's detailed examination revealed significant impairment of the left hand. Doctor Hui noted significant limitation of function of the left hand for grasping and dexterity. The main reason for this was the loss of motion of the remaining ring and little fingers, as well as numbness at the tip of those two digits. Doctor Hui concluded with his opinion that, "*** in addition to amputation of the index and middle fingers, I feel that Mr. Limon also has substantial loss of function of the ring and little fingers which has caused him to have loss of grip and dexterity. In my opinion, I feel Mr. Limon is entitled to additional discretionary loss of use of the left hand."
The claimant's request is supported on a medical basis.
 The claimant's work background has been as a machine repairman and mechanic. Claimant's job, at the time of the injury, was "machine repair supervisor." Claimant still is working in this position with the instant employer. However, clearly claimant is not capable of working with the tools as he was prior to the injury. Claimant testified that his job duties have modified since the injury to the extent that he can't fix the machines as before the injury. The employer has been accommodating the claimant in this regard.
 {¶ 21} The employer disputes the total loss of use award contending that the claimant is performing the same job as prior to the injury. This Staff Hearing Officer does not find the employer's contention to be persuasive. The claimant's left hand is essentially useless. The claimant's work experience is as a machine repairman. He was recently promoted to a supervisor position just prior to the injury. He suffered a traumatic injury to the left hand repairing a bread machine while he was working as a "supervisor." The instant injury itself is proof that claimant's job as a "supervisor" prior to the injury involved working with tools with both hands.
 The instant injury has caused disability and handicaps greater than normal. The injury resulted in a functional loss of use of the left hand causing a handicap and disability exceeding the normal for this injured worker with experience as a machine repairman.
 Therefore, it is the order of this Staff Hearing Officer to GRANT claimant a discretionary loss of use of the left hand. Claimant is hereby awarded the remaining 110 weeks for the scheduled loss pursuant to O.R.C. Section 4123.57(B).
***
 This order is based upon the report of Doctor Hui (8/6/2001) and testimony at hearing.
 {¶ 22} Further appeal was refused.
Conclusions of Law:
 {¶ 23} In this original action, the employer contends that the commission abused its discretion in granting an additional award for loss of fingers under R.C. 4123.37(B). For the reasons set forth below, the magistrate finds no abuse of discretion.
 {¶ 24} R.C. 4123.57(B) is a "scheduled loss" provision that sets forth specific rates of compensation for the loss of listed body parts. Losses need not occur from amputation, and a claimant may recover for the loss of use of a body part. State ex rel. Walker v. Indus. Comm.
(1979), 58 Ohio St.2d 402.
 {¶ 25} For the loss of a finger, the statute states a specific rate of compensation — 15 to 35 weeks of compensation depending on the finger. For the loss of a hand, the award is 175 weeks of compensation. In addition, where the loss of fingers is particularly disabling in view of the type of work the claimant did, R.C. 4123.57(B) provides that additional compensation may be granted up to the amount for the loss of the hand:
 If the claimant has suffered the loss of two or more fingers by amputation or ankylosis AND the nature of the claimant's employment in the course of which the claimant was working at the time of the injury *** is such that the handicap or disability resulting from the loss of fingers, or loss of use of fingers, exceeds the normal handicap or disability resulting from the loss of fingers, or loss of use of fingers, the administrator may take that fact into consideration and increase the award of compensation accordingly, but the award made shall not exceed the amount of compensation for loss of a hand. (Emphasis added.)
Thus, the statute permits an additional award where the claimant experiences a greater than normal disability from the loss of fingers than other workers would experience from that loss, due to the nature of the work claimant was doing when injured. (Hereinafter, this additional award may be referred to as an "increased award for finger loss" or IFL award.)
 {¶ 26} The magistrate notes that, in order to receive an IFL award, the claimant need not prove loss of use of the entire hand. The statute merely requires that the disability experienced by the particular claimant be more than usual, based on the type of work that claimant did.
 {¶ 27} The parties cite no reported decisions addressing the boundaries of the commission's discretion regarding IFL awards. However, in determining whether the disability of a particular claimant is greater than usual, the commission has considered factors such as the extent to which the former job involved manipulation of the fingers, and the extent to which the claimant can or cannot return to his former employment. SeeHudson v. Tompkins Industries (1997), 118 Ohio App.3d 131 (Although the appellate court ruled on procedural matters rather than the merits of an IFL award, the commission's order shows that it denied the award because claimant was "able to return to his former position of employment" as a punch-press operator with some modifications by the employer "to ease his return to work," and that the disability therefore did not exceed the usual disability attendant on a loss of fingers); State ex rel. Morganv. Superior Fibers, Inc. (June 13, 2002), Franklin App. No. 02AP-20 (Magistrate's Decision) (quoting commission's denial of IFL award where four fingers were amputated but three were reattached, and where claimant retained limited ability to use those fingers and returned to his former supervisory position with some accommodations); Lawrence Moye, BWC claim no. 94-538728, Indus. Comm. Record of Proceedings (Oct. 30, 1997), 1997 Ohio Wk. Comp. LEXIS 70 (administrative order in which commission denied IFL award, stating that it was "important to note that Claimant's former job duties did not require any fine manipulation with the right hand such that the loss of the two fingers would make the right hand wholly or partially useless at work," and also stating that claimant failed to submit "persuasive medical evidence demonstrating that he suffered the additional disability of losing all or a portion of the use of his right hand by the total loss of his second and third fingers," in a case where the work at the time of injury required claimant to lift objects with his left hand, put them on a stamping surface, position them with both hands, and use a foot pedal to activate the stamper).
 {¶ 28} In State ex rel. Crown Zellerbach Corp. v. Indus. Comm.
(1986), Franklin App. No. 85AP-579, unreported, this court refused to disturb an IFL award to a claimant who sustained an amputation of three fingers of the right hand that had rendered her unable to continue working as a laminating-machine operator because the work required grasping ability of both hands. Due to the nature of her duties, the impact of the loss of three fingers was as severe as if she had lost the hand because she was no longer "capable of performing the duties of the occupation." In reaching its decision, the court relied in part on the statutory requirement that the workers' compensation laws be interpreted liberally in favor of injured workers.
 {¶ 29} Several principles emerge. First, the statute does not apply only to workers like concert pianists, surgeons, professional athletes, etc. Although the statute permits an IFL award to such workers, who have developed extremely valuable manual skills that are rendered practically useless by the loss of fingers, the statute is not restricted to them. The statute merely requires that the worker's loss be more disabling than usual, not that it cause the most financial loss. In addition, the greater financial loss sustained by the concert musician, surgeon or professional athlete is reflected in the higher weekly wage on which PPD compensation would be based. A surgeon's additional 110 weeks of compensation for the loss of several fingers would be many times the 110 weeks of compensation to a mechanic for the same bodily loss, although both are unable to market their manual skills.
 {¶ 30} At oral argument, relator agreed that the statute does apply to machinists, electricians, etc., if the criteria are met. Relator explained that, if the present claimant had been working as a repairman instead of a supervisor, he would be eligible for an IFL award, but argued that the evidence proved that claimant had not been required to use his fingers in performing his job at the time of injury.
 {¶ 31} Another principle that emerges is that the commission should consider all the circumstances, including the extent to which the fingers were needed to perform the occupation and the extent to which claimant could continue performing the same job. As yet, however, the courts have not addressed whether, when an injured worker develops a new focus of work — using his accrued knowledge in continued employment but unable to use his manual skills — that claimant is ineligible for an IFL award under R.C. 4123.57(B). Examples would include the situation where a concert violinist can no longer play the violin but can continue performing his duties as assistant conductor. Similarly, following a loss of fingers, a surgeon who had substantial administrative duties or teaching duties could continue working by focusing on the administrative or educational matters while ceasing "hands on" surgical duties. In each hypothetical situation, the worker would have entirely lost a valuable marketable manual skill but could continue employment using the knowledge gained from the prior work, even though a significant occupation was foreclosed.
 {¶ 32} In the subject order before the court, the commission found that claimant satisfied the threshold requirement of the statute, in that he proved the loss of two fingers. That finding is not disputed.
 {¶ 33} Next, the commission concluded that claimant's loss of fingers and accompanying loss of hand function warranted an additional award beyond the award for the loss of the fingers because his work as a repairmen/supervisor had required manipulation of his fingers to use tools which he could no longer manipulate. The commission rejected the evidence that claimant was simply a supervisor with no manual requirements and expressly found that claimant had been a "machine repairman/supervisor" who could no longer perform "the tool manipulation required of the former position of employment." Thus, the commission found that claimant's job at the time of injury required manipulation of the fingers, which he could no longer do.
 {¶ 34} Although the matter was vigorously disputed by the parties — and the employer cites evidence that claimant's job was essentially supervisory — the transcript shows diverse testimony, including testimony that supports the commission's finding of fact that claimant's job at the time of injury included the manipulation of his fingers. The commission not only relied on testimony at hearing, but it also relied on the fact that claimant was injured while using his hands to repair machinery. In sum, the commission adequately supported its finding that claimant's work at the time of injury required the use of his fingers in a manner that he could no longer perform, thus removing him from a manual occupation that he had previously been able to perform.
 {¶ 35} Given the circumstances of this case, the magistrate concludes that the commission was within its discretion to conclude that claimant experienced a disability greater than the disability usually sustained by a worker who loses two fingers. Here, not only were two fingers missing from the hand due to amputation, but the two remaining fingers had lost most of their functional capacity, according to Dr. Hui, the hand specialist on whom the commission relied.
 {¶ 36} Although Dr. Hui noted that claimant still had use of his thumb, his medical findings indicate that the index and middle fingers (in more direct opposition to the thumb) were amputated, and that the other two remaining fingers lacked both flexibility and strength due to the industrial injury. This indicates that use of the thumb to perform tasks was minimized.
 {¶ 37} The magistrate finds no reason to disqualify Dr. Hui's report from evidentiary consideration based on the argument that, in addition to his detailed medical findings, he offered an opinion on the ultimate issue before the commission. See, generally, State ex rel.Stephenson v. Indus. Comm. (1987), 31 Ohio St.3d 167. It is true that Dr. Hui opined that claimant was "entitled to" benefits for the "loss of use of his hand." However, the commission's order makes clear that it did not adopt Dr. Hui's legal conclusion but accepted his medical view that claimant had sustained a "loss of use of his hand." The commission provided a detailed description of its rationale and the factors supporting its decision under R.C. 4123.57(B), making clear findings as to the nature of claimant's job at the time of injury. In regard to medical impairment/capacity, the commission found that the hand was essentially useless, citing only Dr. Hui's report.
 {¶ 38} Thus, the magistrate concludes that relator has not demonstrated an improper reliance by the commission on an opinion beyond the doctor's role. A reasonable finder of fact could conclude from the medical findings and conclusions in Dr. Hui's report that claimant's left hand was essentially useless to him on the job.
 {¶ 39} The magistrate concludes that the commission had discretion to grant an increased award for loss of fingers. The commission found that claimant's job at the time of injury required use of the fingers and hand in a manner that he could no longer perform. His injury foreclosed an entire occupation as a practical matter and significantly limited his work for relator. The combination of factors is not the same as in the cases on which relator relies. In summary, the statute gives broad discretion to the commission, and the magistrate concludes that the employer has not met its burden in mandamus of proving that the commission had a legal duty to deny an IFL award in these circumstances.
 {¶ 40} Last, the employer emphasizes that the statute permits an increased award "up to" the number of weeks for loss of the hand and contends that the commission abused its discretion in awarding the full amount permitted. However, given the commission's finding that claimant's hand was essentially useless and that he had needed to use his fingers and hand in his occupation, the commission was within its discretion to award the full amount permitted by statute.
 {¶ 41} Accordingly, the magistrate recommends denial of the requested writ.